# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

_____

| | |
|---|---|
| NENA C. RHODES, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )    No. 15-cv-1230-tmp |
| | ) |
| COMMISSIONER OF SOCIAL | ) |
| SECURITY, | ) |
| | ) |
|     Defendant. | ) |

_____

## ORDER AFFIRMING THE COMMISSIONER'S DECISION
_____

Before the Court is plaintiff Nena C. Rhodes's appeal from a final decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 401 *et seq.*, and for supplemental security income ("SSI") under Title XVI of the Act, 42 U.S.C. §§ 1391 *et seq.* (ECF No. 1.) The parties have consented to the jurisdiction of the United States magistrate judge pursuant to 28 U.S.C. § 636(c). (ECF No. 9.) For the following reasons, the Commissioner's decision is affirmed.

## I. FINDINGS OF FACT

Rhodes filed claims for disability insurance benefits and SSI on August 30, 2012, with an alleged onset date of August 6, 2012. (R. 14.) Rhodes's claims were denied initially and upon reconsideration. At Rhodes's request, an Administrative Law Judge ("ALJ") held a hearing and issued a written decision. (R. 11-57.)

The ALJ found that Rhodes had the following severe impairments: obesity, degenerative disc disease of the lumbar spine, seizure disorder, osteoarthritis, carpal tunnel syndrome, history of pulmonary embolus, depression and anxiety. (R. 16.) However, the ALJ determined that Rhodes did not have an impairment or combination of impairments listed in or medically equal to one of the listed impairments contained within 20 C.F.R. part 404, subpart P, appendix 1. (R. 16-17.) Specifically, the ALJ stated that he considered Rhodes's degenerative disc disease and osteoarthritis under listings 1.02 and 1.04 and, although not directly addressed by the listings, her carpal tunnel syndrome under listing 1.02. (R. 17.) The ALJ stated that there was no evidence that Rhodes was unable to ambulate effectively as defined in 1.00B2b or that she was unable to perform fine and gross movements effectively as defined in 1.00B2c. (Id.) The ALJ considered Rhodes's seizure disorder under listings 11.02 and 11.03, yet noted that the record indicated that her seizures were responsive to medication. (Id.) Likewise, the ALJ considered whether Rhodes's obesity, independently or in concert with another impairment, met or equaled any of the listed impairments and concluded it did not. (Id.) The ALJ considered Rhodes's mental impairments singularly and in combination, and found they did not meet or medically equal the criteria of listings 12.04 and 12.06. (Id.) The ALJ determined that the "paragraph B" criteria were not satisfied because Rhodes

had only mild restrictions in daily living, moderate difficulties in social functions, moderate difficulties in concentration, persistence or pace, and no episodes of decompensation. (Id.) The ALJ also determined that the evidence failed to satisfy the "paragraph C" criteria. (Id.)

The ALJ next determined that Rhodes retained the residual functional capacity ("RFC") to

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can occasionally balance, stoop, kneel, crouch and crawl; occasionally climb ramps and stairs, but never ladders, ropes or scaffolds; can engage in frequent handing and grasping with the left upper extremity; no work at unprotected heights or around unguarded moving machinery; no driving; no concentrated exposure to temperature extremes or high humidity; no concentrated exposure to pulmonary irritants; can understand, remember, and carryout simple, routine, repetitive and detailed, but not executive level tasks; can handle infrequent workplace changes; and can have occasional interaction with the public.

(R. 18.) To support this conclusion the ALJ considered Rhodes's testimony that she experiences seizures on a weekly basis after which she must rest for a day or so; that she has a collapsed lung and difficulty breathing, walking, and bending; and that she can exert herself for three to five minutes before she starts having problems breathing. (Id.) The ALJ determined that Rhodes's description of the intensity, persistence, and limiting effects of her symptoms was not entirely credible. Specifically, the ALJ considered Rhodes's obesity as required by SSR 02-1p. (Id.) A consultative examiner, Dr. Gary McBride, opined in November 2012

that Rhodes's obesity did not adversely affect her ability to walk, twist, turn, bend, or lift, and a neurologic exam at that time showed negative straight leg raise tests and no other focal or sensory deficits. (R. 21.) The ALJ noted that Rhodes's seizures were well controlled by her prescription medications, and also showed a normal MRI and EKG in an April 2013 examination. (R. 19.) The ALJ also observed that, while Rhodes spent seven days in the hospital in November 2011 for pulmonary embolus, she has not had recurrent instances of pulmonary embolism, although she was subsequently treated for acute bronchitis with exacerbation in December 2013. (R. 20.) A November 2012 examination revealed that Rhodes suffered no complications from osteoarthritis, and her back pain was stable. (R. 21.) At a December 2013 examination, Rhodes reported 80% improvement in her symptoms with injections, and moderate relief from pain with medications. (Id.) At an examination by Dr. John Woods in June 2014, Rhodes demonstrated numerous physical impairments which the ALJ did not fully credit because "the evidence fails to support the presence of many of these findings outside of this examination." (R. 21-22.) The ALJ further noted it was "plausible to assume that [Rhodes] was experiencing an acute exacerbation of her symptoms on this day and that other examinations in the record provide a more accurate depiction of [Rhodes's] every day functioning." (R. 22.) The ALJ also gave little weight to Dr. Woods's opinion that Rhodes is

permanently impaired from gainful employment because that determination is reserved for the Commissioner, and because the overall evidence of the record did not support the assertion. (R. 23-24.) A psychological evaluation in October 2012 revealed some mild cognitive disorganization, but no indication of any dementing type process. (R. 22.) That examiner stated that Rhodes would likely have difficulty in relating to both co-workers and supervisors in a job-related situation; the ALJ gave little weight to this assertion because the record did not indicate that Rhodes ever had problems interacting with others at work in the past. (Id.) Rather, the ALJ noted that the record showed Rhodes maintained successful relationships with family members, cooperated with the psychological examiners, could go to doctor visits and the grocery store without issue, and adopted a child during the period in question. (R. 24.) Rhodes stated her depression had improved at an examination in May 2013. (R. 22.) In November 2013, she stated that her symptoms had worsened, however the ALJ noted the increase was likely attributable to relationship issues at home and the recent adoption of an infant child into the household. (R. 22-23.) The ALJ thus determined that claimant's impairments warranted additional limitations not assessed by state agency medical consultants, but less limitations than alleged by the claimants. Specifically, the ALJ credited Rhodes's noted left wrist abnormalities with a restriction to frequent handling and grasping

with the left upper extremity, and totally restricted her from driving based on her seizure history. (R. 23.) The ALJ found that given her limitations Rhodes was unable to perform any past relevant work as an assembler, hand packager, and inspector. (R. 24.)

At Step Five, the ALJ found that, considering Rhodes's age, education, work experience, and RFC, jobs exist in significant numbers in the national economy that she could perform. (R. 25.) The ALJ noted that Rhodes's ability to perform the full range of light work was impeded by additional limitations, and thus the Medical-Vocational Guidelines could only be used as a framework. (Id.) The ALJ relied on a vocational expert's ("VE") testimony that given all of Rhodes's limitations, she could nonetheless perform work as a ticketer, sorter, and inspector. (Id.) Pursuant to SSR 00-4p, the ALJ determined that the VE testimony was consistent with the information contained in the Dictionary of Occupational Titles. (Id.) The ALJ thus determined that Rhodes was not disabled. (R. 26.) The Social Security Administration's ("SSA") Appeals Council denied Rhodes's request for review, and the ALJ's decision became the final decision of the Commissioner. (R. 1.)

Rhodes filed the instant action on September 15, 2015. (ECF No. 1.) Rhodes argues that the ALJ failed to give the correct weight to the opinions of Dr. McBride and Dr. Woods and that, if

properly credited, such opinions would compel a finding of disabled under Listing 11.02. (Id. at 13.) Rhodes also argues that the ALJ erroneously used a boilerplate statement of credibility in assessing Rhodes's testimony, instead of the standard mandated by SSR 96-7p. (Id. at 16.) Rhodes asserts that the ALJ did not explain why her "clearly documented seizure disorder would not meet or medically equal Listing 11.02." (Id. at 18.) Finally, Rhodes argues that the ALJ's denial is not supported by substantial evidence. (Id. at 19.) Thus, Rhodes requests that the matter be reversed and benefits awarded, or remanded for further proceedings. (Id. at 20.)

## II. CONCLUSIONS OF LAW

**A. Standard of Review**

Under 42 U.S.C. § 405(g), a claimant may obtain judicial review of any final decision made by the Commissioner after a hearing to which he or she was a party. "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Judicial review of the Commissioner's decision is limited to whether there is substantial evidence to support the decision and whether the Commissioner used the proper legal criteria in making the decision. Id.; Winn v. Comm'r of Soc. Sec., 615 F. App'x 315, 320 (6th Cir.

2015); Cole v. Astrue, 661 F.3d 931, 937 (6th Cir. 2011); Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007). Substantial evidence is more than a scintilla of evidence but less than a preponderance, and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Kirk v. Sec'y of Health & Human Servs., 667 F.2d 524, 535 (6th Cir. 1981) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).

In determining whether substantial evidence exists, the reviewing court must examine the evidence in the record as a whole and "must 'take into account whatever in the record fairly detracts from its weight.'" Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990) (quoting Garner v. Heckler, 745 F.2d 383, 388 (6th Cir. 1984)). If substantial evidence is found to support the Commissioner's decision, however, the court must affirm that decision and "may not even inquire whether the record could support a decision the other way." Barker v. Shalala, 40 F.3d 789, 794 (6th Cir. 1994) (quoting Smith v. Sec'y of Health & Human Servs., 893 F.2d 106, 108 (6th Cir. 1989)). Similarly, the court may not try the case *de novo*, resolve conflicts in the evidence, or decide questions of credibility. Ulman v. Comm'r of Soc. Sec., 693 F.3d 709, 713 (6th Cir. 2012) (citing Bass v. McMahon, 499 F.3d 506, 509 (6th Cir. 2007)). Rather, the Commissioner, not the court, is charged with the duty to weigh the evidence, to make credibility determinations, and to resolve material conflicts in the testimony.

Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 528 (6th Cir. 1997); Crum v. Sullivan, 921 F.2d 642, 644 (6th Cir. 1990); Kiner v. Colvin, No. 12-2254-JDT, 2015 WL 1295675, at *1 (W.D. Tenn. Mar. 23, 2015).

**B. The Five-Step Analysis**

The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1). Additionally, section 423(d)(2) of the Act states that:

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

Under the Act, the claimant bears the ultimate burden of establishing an entitlement to benefits. Oliver v. Comm'r of Soc. Sec., 415 F. App'x 681, 682 (6th Cir. 2011). The initial burden is on the claimant to prove she has a disability as defined by the Act. Siebert v. Comm'r of Soc. Sec., 105 F. App'x 744, 746 (6th

-9-

Cir. 2004) (citing Walters, 127 F.3d at 529); see also Born v. Sec'y of Health & Human Servs., 923 F.2d 1168, 1173 (6th Cir. 1990). If the claimant is able to do so, the burden then shifts to the Commissioner to demonstrate the existence of available employment compatible with the claimant's disability and background. Born, 923 F.2d at 1173; see also Griffith v. Comm'r of Soc. Sec., 582 F. App'x 555, 559 (6th Cir. 2014).

Entitlement to social security benefits is determined by a five-step sequential analysis set forth in the Social Security Regulations. See 20 C.F.R. §§ 404.1520 & 416.920. First, the claimant must not be engaged in substantial gainful activity. See 20 C.F.R. §§ 404.1520(b) & 416.920(b). Second, a finding must be made that the claimant suffers from a severe impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii) & 416.920(a)(5)(ii). In the third step, the ALJ determines whether the impairment meets or equals the severity criteria set forth in the Listing of Impairments contained in the Social Security Regulations. See 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526. If the impairment satisfies the criteria for a listed impairment, the claimant is considered to be disabled. On the other hand, if the claimant's impairment does not meet or equal a listed impairment, the ALJ must undertake the fourth step in the analysis and determine whether the claimant has the RFC to return to any past relevant work. See 20 C.F.R. §§ 404.1520(a)(4)(iv) & 404.1520(e). If the ALJ determines that the claimant can return to

past relevant work, then a finding of not disabled must be entered. Id. But if the ALJ finds the claimant unable to perform past relevant work, then at the fifth step the ALJ must determine whether the claimant can perform other work existing in significant numbers in the national economy. See 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g)(1), 416.960(c)(1)-(2). Further review is not necessary if it is determined that an individual is not disabled at any point in this sequential analysis. 20 C.F.R. § 404.1520(a)(4).

**C. Whether the ALJ's Assessment of the Opinion Evidence was Supported by Substantial Evidence**

Rhodes argues the ALJ erroneously gave little weight to the findings of Dr. McBride and Dr. Wood. (ECF No. 13 at 14.) A treating source's medical opinion may be given controlling weight, provided that it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence . . . ." 20 C.F.R. §§ 404.1527(c); 416.927(c). Otherwise, the ALJ will consider six factors in deciding the weight to give any medical opinion. Id. The examining relationship is considered, with more weight generally given to sources that have actually examined the claimant. 20 C.F.R. §§ 404.1527(c)(1); 416.927(c)(1). Second, the treatment relationship is evaluated, specifically regarding its length, nature, and extent. 20 C.F.R. §§ 404.1527(c)(2); 416.927(c)(2). The supportability, consistency, specialty, and

"any factors . . . which tend to support or contradict the medical opinion" must also be considered. 20 C.F.R. §§ 404.1527(c)(3)-(6); 416.927(c)(3)-(6). The SSA promises claimants that it "will always give good reasons in [its] notice of determination or decision for the weight [it gives the claimant's] treating source's opinion." 20 C.F.R. §§ 404.1527(c)(2); 416.927(c)(2).

The ALJ's determination that Dr. Woods and Dr. McBride's opinions were not entitled to controlling weight was supported by substantial evidence. Likewise, the ALJ gave good reasons, as required by the regulations, why these opinions were afforded little weight. The ALJ pointed to specific inconsistencies with other substantial evidence in the record which justified this decision. For example, the ALJ reviewed Dr. McBride's opinion and noted that it appeared to be based on Rhodes's self-reports rather than objective findings. See Griffith v. Comm'r of Soc. Sec., 582 F. App'x 555, 564 (6th Cir. 2014) (noting ALJ is not required to accept the opinion of a medical examiner based solely on the claimant's self-reports of symptoms). Rhodes indicated the ability to lift ten pounds while seated due to complaints of left wrist pain; however, she could manipulate and grasp objects normally, and had a normal range of motion in her shoulders, elbows, wrists, hips and ankles. Furthermore, this finding was contradicted by subsequent examinations of the claimant by other sources, as well as radiology reports of Rhodes's right knee and lumbar spine. The

ALJ further explained that Dr. Woods's opinion was given little weight because the overall evidence of the record did not support his assessment. Specifically, there was substantial evidence in the record showing Rhodes did not have persistent gait abnormalities that interfere with her ability to ambulate effectively, including other examiners' opinions and imaging reports of the right knee and lumbar spine. Furthermore, the ALJ noted that Dr. Woods's suggested level of limitation was inconsistent with Rhodes's treatment history and ability to engage in a wide range of activities, including caring for her children. See Lester v. Soc. Sec. Admin., 596 F. App'x 387, 389 (6th Cir. 2015). Accordingly, the ALJ gave good reasons, as required, for his determination. See 20 C.F.R. §§ 404.1527(c)(2); 416.927(c)(2). Because the ALJ's determination regarding the weight to assign the opinions of Dr. McBride and Dr. Woods was supported by substantial evidence, it must be affirmed. See Kirk, 667 F.2d at 535.

**D. Whether the ALJ's Credibility Determination was Supported by Substantial Evidence**

Rhodes next argues that the ALJ erred in determining her credibility because he merely recited a boilerplate statement and did not adhere to SSR 96-7p. The Sixth Circuit has "'held that an administrative law judge's credibility findings are virtually unchallengeable' absent compelling reasons." Shepard v. Comm'r of Soc. Sec., No. 17-1237, 2017 WL 4251707, at *4 (6th Cir. Sept. 26, 2017) (quoting Ritchie v. Comm'r of Soc. Sec., 540 F. App'x 508,

511 (6th Cir. 2013)). Those compelling reasons appear when ALJs' credibility determinations are not "supported by substantial evidence." Rogers, 486 F.3d at 249. When making a credibility determination, ALJs "must consider the entire case record and give specific reasons for the weight given to the individual's statements." SSR 96-7p, 1996 WL 374186, at *4 (July 2, 1996).[1] In the event that "an individual's statements about pain or other symptoms are not substantiated by the objective medical evidence, the adjudicator must consider all of the evidence in the case record . . . ." Id. Beyond objective medical evidence, the SSA has identified several specific considerations for ALJs. These include the claimant's daily activities; the location, duration, frequency and intensity of the symptoms; aggravating factors; type, dosage, effectiveness, and side effects of medications; treatment other than medication that the claimant receives; and any other information relevant to these symptoms. 20 C.F.R. §

---

[1]This court previously found that SSR 16-3p, the SSA's new ruling on assessing a claimant's subjective complaints, applied to judicial review of ALJ opinions predating March 28, 2016. See Patterson v. Colvin, No. 13-CV-1040-JDB-TMP, 2016 WL 7670058, at *6–9 (W.D. Tenn. Dec. 16, 2016), report and recommendation adopted, No. 13-1040, 2017 WL 95462 (W.D. Tenn. Jan. 10, 2017). But, the SSA recently republished SSR 16-3p and clarified that, while ALJs are to apply SSR 16-3p to any determination or decision that they make after March 28, 2016, the SSA expects reviewing courts to apply the "rules that were in effect at the time we issued the decision under review." SSR 16-3p, 2017 WL 5180304 *13 n.27 (Oct. 25, 2017). The ALJ's decision in this case is dated August 22, 2014. Hence, this court will assess the ALJ's compliance with 96-7p. See Adams v. Berryhill, No. 7:17-CV-98-EBA, 2018 WL 473016, at *6 (E.D. Ky. Jan. 18, 2018) (noting that the republished ruling

404.1529(c)(3)(i)-(vii).

Contrary to Rhodes's argument, the ALJ's assessment of her credibility was not entirely contained within a one-sentence "boilerplate statement." Rather, the ALJ complied with the mandate to consider the entire case record and give specific reasons for the weight given to Rhodes's statements. The ALJ considered Rhodes's testimony regarding her condition, and then repeatedly identified specific inconsistencies in the record that cast doubt on the credibility of that testimony. Specifically, the ALJ noted Rhodes's testimony regarding her obesity, seizure disorder, pulmonary embolus, back pain, and knee pain. The ALJ then observed that Rhodes consistently underwent normal physical examinations and stated that her seizures were effectively managed by her prescribed medications. Furthermore, the ALJ noted that Rhodes's daily activities indicated the mental capacity to concentrate, pay bills, make financial decisions, and adopt a child during the relevant period. In addition, the ALJ noted that a consultative examiner opined that Rhodes's obesity did not adversely affect her ability to walk, twist, turn, bend, or lift, and a neurologic exam at that time showed negative straight leg raise tests and no other focal or sensory deficits. The ALJ also observed that Rhodes did not have recurrent instances of pulmonary embolism, she suffered no complications from osteoarthritis, her back pain was stable, she

---

requires the court to apply 96-7p).

reported 80% improvement in her symptoms with injections, and moderate relief from pain with medications. This discussion provided substantial evidence in support of the ALJ's credibility determination. Accordingly, because the ALJ's determination on this point was consistent with the relevant regulations and supported by substantial evidence, it must be affirmed.

**E. Whether the ALJ's Step Three Finding was Supported by Substantial Evidence**

Rhodes finally argues that the ALJ did not explain why Rhodes's seizure disorder did not meet or medically equal Listing 11.02. See 20 C.F.R. Pt. 404 Subpt. P, App. 1, § 11.02. The claimant bears the burden of showing her impairments meet or equal a listed impairment. See 20 C.F.R. § 416.920(a)(4)(iii); Foster v. Halter, 279 F.3d 348, 354 (6th Cir. 2001). "A claimant can demonstrate that she is disabled because her impairments are equivalent to a listed impairment by presenting 'medical findings equal in severity to all the criteria for the one most similar listed impairment.'" Foster, 279 F.3d at 354 (quoting Sullivan v. Zebley, 493 U.S. 521, 531 (1990)). To satisfy Listing 11.02 for the disability of epilepsy, an individual must suffer more than one seizure a month with at least three months of treatment and the record must contain a description of a typical seizure. See 20 C.F.R. Pt. 404 Subpt. P, App. 1, § 11.02. The ALJ recognized that the medical evidence submitted by Rhodes was insufficient to compel a finding of disabled under this listing. Specifically, the ALJ

noted that, based on the objective medical evidence and testimony presented, Rhodes's seizures appeared to be responsive to her prescribed medications. Furthermore, the medical records failed to establish that Rhodes experienced more than one seizure per month, even while taking her medication. Rhodes submits that her testimony – that she continued to suffer two seizures per month, despite her treatment – compels a finding of disabled under the listing. However, as explained above, the ALJ provided sufficient reasons for discounting Rhodes's credibility. Thus, the ALJ's determination that Rhodes did not meet or medically equal Listing 11.02 was supported by substantial evidence. Accordingly, that determination must likewise be affirmed.

### III. CONCLUSION

For the foregoing reasons, the Commissioner's decision is affirmed.

IT IS SO ORDERED.

s/ Tu M. Pham  
TU M. PHAM  
United States Magistrate Judge

April 17, 2018  
Date